UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| TULIO F. PATINO, | ) | |
| | ) | |
| Petitioner, | ) | 3:09-cv-0336-RCJ-RAM |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| JACK PALMER, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

This is an action on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 brought by Tulio Patino, a Nevada prisoner represented by counsel. Before the Court is respondents' Answer (ECF No. 28) and petitioner's Reply (ECF No. 32). Based upon the following discussion, the petition shall be denied.

**I.   Background**

Petitioner was convicted after a guilty plea on a charge of Lewdness with a Child Under the Age of Fourteen Years and was sentenced to life in prison with the possibility of parole after ten years. Exhibits 15, 16, and 19.[1] He was also sentenced to lifetime supervision as a sex offender under NRS 176.0931. Exhibit 18. Petitioner was represented by court-appointed counsel during these proceedings.

---

[1] The exhibits referenced in this Order were submitted by petitioner in support of his petition are found in the Court's record at ECF No. 5.

No direct appeal was filed. However, petitioner filed a state post-conviction petition for writ of habeas corpus which presented four grounds for relief including (1) a claim that his guilty plea was involuntary because he was tricked by counsel and because the plea canvass was insufficient under due process and NRS 174.035; (2) a claim that petitioner's Fourteenth Amendment rights were violated because he was not advised of the true consequences of lifetime supervision and because the statute violates the First, Fifth, Sixth, and Fourteenth Amendments; (3) a claim that his Sixth Amendment rights to the effective assistance of counsel were violated because counsel told petitioner his family wished him to plead guilty and because counsel failed to file a direct appeal that petitioner requested, failed to investigate facts and witnesses and did not advise petitioner of a defense strategy or prepare for trial; and (4) a claim that petitioner's First and Fourteenth Amendment rights were violated when counsel failed to file a requested direct appeal. Exhibits 30 and 32.

Petitioner was appointed counsel, who then supplemented the petition with *Lozada*[2] briefing on the procedures for addressing ineffective assistance of counsel claim related to the failure to file a direct appeal and a second supplement to further address the claims petitioner raised in his pro se petition. Counsel did not raise any additional claims for relief. Exhibits 37 and 40.

Following a summary dismissal by the state court of his first two claims for relief, an evidentiary hearing was conducted in which petitioner and his trial counsel testified. Exhibit 43. The petition was denied and petitioner appealed without counsel. Exhibits 44 and 45. The Nevada Supreme Court affirmed the lower court's decision. Exhibit 53. Petitioner next brought his federal petition under 28 U.S.C. § 2254, raising three claims for relief (ECF No. 5).

II.   **Legal Standards**

  A.   Habeas Corpus Standard

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

---

[2]*Lozada v. Deeds,* 964 F.2d 956 (9th Cir. 1991).

1  (AEDPA), provides the standards of review that this Court applies to the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1173 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. at 1174 (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409, 120 S.Ct. 1495).

In determining whether a state court decision is contrary to federal law, this Court

3

1   looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04
2   (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 122 S.Ct.
3   324 (2001) .  With respect to pure questions of fact, "a determination of a factual issue made by a
4   State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting
5   the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).  If there
6   is no reasoned decision upon which the Court can rely, then it must make an independent review of
7   the record to determine whether the state court clearly erred in its application of controlling federal
8   law. *See Delgado v. Lewis,*  223 F.3d 976, 982 (9th Cir.2000).

    B.  Ineffective Assistance of Counsel

10    Petitioner's grounds for relief rely generally on allegations of ineffective assistance of
11  counsel in violation of rights protected by the Sixth Amendment of the United States Constitution.

13    In *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), the Supreme Court
14  declared that "the right to counsel is the right to the effective assistance of counsel."  In *Strickland v.*
15  *Washington*, 466 U.S. 668 (1984), the Court established the standards by which claims of ineffective
16  counsel are to be measured.  In *Strickland*, the Court propounded a two prong test; a petitioner
17  claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's
18  representation "fell below an objective standard of reasonableness," and (2) that the attorney's
19  deficient performance prejudiced the defendant such that "there is a reasonable probability that, but
20  for counsel's unprofessional errors, the result of the proceeding would have been different."
21  *Strickland*, 466 U.S. at 688, 694.

22    Regarding the first prong -- commonly known as the "effectiveness prong" -- the
23  *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond
24  generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to
25  advocate the defendant's cause, and the duty to communicate with the client over the course of the

4

1  prosecution. *Id.* Defense counsel's duties are not to be defined so exhaustively as to give rise to a
2  "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the
3  constitutionally protected independence of counsel and restrict the wide latitude counsel must have
4  in making tactical decisions." *Id.*

5  The *Strickland* Court instructed that review of an attorney's performance must be
6  "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in
7  order to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a
8  strong presumption that counsel's conduct falls within the wide range of reasonable professional
9  assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action
10 might be considered sound trial strategy." *Id.* (citation omitted).

11 Construing the Sixth Amendment to guarantee not effective counsel *per se*, but rather
12 a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that
13 counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding
14 of ineffective assistance. In order to satisfy *Strickland's* second prong, the defendant must show that
15 the attorney's sub-par performance prejudiced the defense. *Id.* at 691-92. The test is whether there
16 is a reasonable probability that, but for the attorney's challenged conduct, the result of the
17 proceeding in question would have been different. *Id.* at 691-94. The Court defined reasonable
18 probability as "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

19 In the case of a guilty plea, petitioner must demonstrate that but for the actions or
20 inactions of counsel, he would not have pled guilty, but would have insisted on going to trial. *Hill v.*
21 *Lockhart,* 474 U.S. 52, 59 (1985).

22 **III.   Discussion**

23 Ground One

24 In ground one, petitioner claims:

25 Mr. Patino's counsel coerced Mr. Patino's plea and failed to
   adequately advise Mr. Patino of the evidence and the consequences
26

5

1           of his plea.  As a result of the ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the Untied
2           States Constitution, Mr. Patino's plea was not entered knowingly, intelligently and voluntarily.
3

4 Petitioner, p. 10.  In subpart A, petitioner, who maintains his innocence, asserts that counsel coerced

5 him by falsely telling him that his family desired him to enter a guilty plea and that counsel

6 physically assaulted him during a visit in the jail.  Further, petitioner contends that counsel, as well

7 as the Spanish language interpreter told him to lie to the court in order to accept the plea

8 negotiations.  In subpart B, petitioner contends that counsel refused to call Mr. Patino's brother as an

9 alibi witness, should petitioner insist on going to trial.

10        (a)    A waiver of constitutional rights, such as occurs in entering a guilty plea, not

11 only must be voluntary but must be a knowing, intelligent act done with awareness of the relevant

12 circumstances and likely consequences.  *Brady v. U.S.*  397 U.S. 742, 748, 90 S.Ct. 1463, 1469

13 (U.S.N.M. 1970) A guilty plea is involuntary if it is the product of threats, improper promises, or

14 other forms of wrongful coercion.  *See Brady,* 397 U.S. at 754-55, 90 S.Ct. at 1463; *Iaea v. Sunn* 800

15 F.2d 861, 866 (9th Cir.1986).

16        At the evidentiary hearing on state post-conviction review, petitioner testified that

17 counsel had pressured him to plead guilty, had pushed him down and struck him in the mouth during

18 jail visits to persuade him to enter a guilty plea.  Exhibit 43, pp. 15-20.  Petitioner was unable to

19 explain why no jail personnel interceded in the assault, given that the interview took place in a room

20 with a window that allowed the jailer to view everything going one inside.  *Id.,* p. 34.   Petitioner did

21 not call the interpreter or any jail personnel to testify in support of his claims.  *See* Exhibit 43,

22 generally. Furthermore, in attempting to explain why he had not reported these events to the court

23 during the entry of plea, petitioner testified that he had lied to the court because he hoped it would

24 make things turn out better for him in court.  *Id.*, pp. 11-12.

25        During the entry of plea hearing, the trial court thoroughly canvassed petitioner about

26

the rights he would waive by pleading guilty, his actions in committing the charged crime and the potential penalties. Exhibit 15. The court specifically discussed the requirement that petitioner be placed on lifetime supervision once he had completed his prison term. *Id.* at 7. At the end, petitioner affirmed that he understood the contents of the guilty plea memorandum and that he had signed the agreement. *Id.* at 8. The court accepted his plea based upon these representations by petitioner. *Id.*

At the evidentiary hearing, trial counsel for petitioner testified, credibly, that he had not coerced, threatened or assaulted the petitioner at any time. *Id.,* at 31. Counsel would not claim that he had not argued with petitioner, but he denied raising his voice, threatening or physically assaulting him in any manner. *Id.,* at 36. Counsel testified that he had advised petitioner to accept the plea offer because there was a good chance that evidence of prior bad acts would be admitted at trial, because the state had agreed to drop the sexual assault charge, because the evidence was "damning" and because it would have been difficult to have his children, the victims, brought into court. *Id.,* at 38-39. Counsel further testified that he had informed his client of the consequences of his guilty plea, including the possible penalties that he might face. *Id.* at 40.

The trial court found petitioner's testimony to be "false ... ludicrous, and ...offensive." *Id.*, at 42. Issues of the credibility of a witness are left to the fact-finder and this Court will not second guess such determinations absent clear error. *See United States v. Stoterau,* 524 F.3d 988, 997 (9th Cir. 2008).

The Nevada Supreme Court affirmed the lower court's denial of relief on this claim stating:

> In determining the validity of a guilty plea, this court looks to the totality of the circumstances. [fn 15: *State v. Freese,* 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000); *Bryant,* 102 Nev. at 271, 721 P.2 at 367.]
>
> First, appellant claims that his counsel and the district court told him that his family wanted him to plead guilty. He further claims that his counsel physically assaulted him while visiting him in jail in an effort

7

1  to coerce him into pleading guilty. Appellant failed to demonstrate that his plea was invalid. Appellant stated in the plea agreement and during the plea canvass that he was not pleading guilty as a result of coercion or promises. Further appellant's counsel testified that he did not assault appellant. The district court determined that appellant failed to demonstrate by a preponderance of the evidence that his guilty plea was coerced, and substantial evidence supports the district court's determination. [fn 16: *See Rincon,* 122 Nev. at 1177, 147 P.3d at 238.] Therefore, the district court did not err in denying this claim. [fn 17: To the extent that appellant claimed his counsel was ineffective for coercing him to plead guilty, the district court did not err in denying this claim for the reason set forth above.]

Second, appellant claimed that his plea was invalid because he was not advised of the specific consequences of lifetime supervision.

\* \* \*

Appellant's claim that he was unaware of the consequence of lifetime supervision is belied by the record. [fn 20: *Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984).] The plea agreement, which appellant signed, provided that appellant's sentence would include lifetime supervision pursuant to NRS 176.0931. Further, he was advised of the consequences of lifetime supervision during the plea canvass. Therefore, we conclude that appellant was properly advised of the lifetime supervision requirement and thus, his plea was not involuntary for this reason. [fn 21: Appellant also contended that his counsel was ineffective for failing to inform him that his sentence would include lifetime supervision. However, as discussed above, appellant was adequately advised of the lifetime supervision requirement. Accordingly, we conclude that appellant failed to demonstrate that his counsel was ineffective in this regard.]

Exhibit 53, p. 5-7.

Based upon the foregoing, this Court finds that the state court's determination of this claim was not contrary to or an objectively unreasonable application of federal law. Moreover, the factual findings were reasonable in light of the record. Petitioner is not entitled to relief on ground one, subpart a.

(b)   Petitioner also alleges that trial counsel refused to call petitioner's brother as an alibi witness. The brother would purportedly have testified that petitioner was with him the entire weekend of the alleged offenses. Petitioner alleges that because counsel refused to present this defense, petitioner accepted the guilty plea.

8

Counsel has a duty to investigate the facts surrounding the alleged crime and to determine the existence of viable defenses. *Strickland,* 466 U.S. at 691. "This includes a duty to ... investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.2001) (citing *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir.1999)). In this case, however, there was no evidence brought out that petitioner was actually in the company of his brother during the time frame of the offenses. Neither petitioner, nor his brother testified at the evidentiary hearing as to petitioner's whereabouts at the time of the molestation. Petitioner did not testify that he had asked counsel to call witnesses or that this purported failure had anything to do with his decision to plead guilty. *See generally,* Exhibit 43. Petitioner has failed to support this claim with any evidence.

The Nevada Supreme Court considered and rejected this claim applying the *Strickland* standard and noting that petitioner had failed to demonstrate counsel's performance was deficient. The court noted:

> Appellant did not show that further investigation would have altered his decision to enter a guilty plea. At the evidentiary hearing, appellant's trial counsel testified that he discussed all the discovery materials with appellant prior to appellant's decision to plead guilty. Further, appellant's counsel also discussed the likelihood of the State introducing prior bad act evidence concerning past incidents of molestation of appellant's brothers. Appellant did not put forth any evidence in support of his brother's or former employer's testimony, or an alleged recantation of the victim, despite the opportunity to do so. Moreover, appellant received a substantial benefit by entry of his guilty plea in the instant case. . . . Thus, appellant failed to demonstrate that he would have proceeded to trial on the original information if his counsel had conducted an investigation into his claims. Therefore, we conclude that the district court did not err in denying this claims.

Exhibit 53, at 2-3.

These factual findings are reasonable in light of the evidence and the state court applied the proper federal standard appropriately. No relief is warranted on ground one, subpart b

9

under 28 U.S.C. § 2254.

### Ground Two

Ground two of the petition was found to be unexhausted by this Court in an Order entered on August 3, 2010. (ECF No. 23.) In that Order the Court found as follows:

> As previously noted, additional or different facts presented to this court which were not presented to the state court, so long as they do not fundamentally alter the nature of the legal claim presented, will not make a claim unexhausted. However, raising additional facts, such as this claim related to petitioner's competence, which was not previously presented to the state court in the petition or brief, leaves such a claim unexhausted. Ground two is unexhausted.

Order on Motion to Dismiss, p. 5. The Court advised petitioner as to the prohibition against the Court's consideration a mixed petition and advised petitioner of his options in that regard. He was told that he could seek a stay of the federal proceedings in order to return to state court to exhaust, or, "[a]lternatively, petitioner [could] advise the court of his desire to abandon the unexhausted claims by filing with the court a sworn declaration of abandonment, signed by the petitioner, himself." *Id.,* p. 6.

In response, petitioner filed a declaration of partial abandonment of ground two (ECF No. 24) and a Motion for Partial Dismissal (ECF No. 25). In those documents, petitioner advised the Court he was willing to abandon only a portion of ground two, that portion which claimed the trial court "failed to 'comprehensively ascertain [petitioner's] competency to enter into the guilty plea agreement." *Id.* The Court dismissed ground two of the petition without prejudice and ordered respondents to file their answer to the remaining grounds for relief. Respondents did as directed. Petitioner argues in his Reply that the "exhausted" part of ground two should be considered on its merits because the Court "improperly dismissed all of Ground Two. . . ."

Petitioner's interpretation of the Court's order on the motion to dismiss was in error and his purported abandonment of the unexhausted portion of ground two was not properly responsive to the Court's order. The Court's order found ground two to be unexhausted. It did not

piece out any part of that ground for dismissal, instead finding that the addition of new facts rendered the entire ground unexhausted. As noted above, petitioner was not invited to abandon a particular part of ground two. The Court's subsequent order dismissed the entire ground two without prejudice. However, based upon petitioner's apparent desire to have the claim reviewed on its merits, the Court will accommodate him. *See* 28 U.S.C. § 2254(b)(2).

In ground two, petitioner claims his guilty plea was not entered knowingly, voluntarily and intelligently in violation of the Fifth and Fourteenth Amendments, due to an infirm plea canvass. The claim is belied by the record and is without merit. The Court has thoroughly reviewed the transcript of proceedings, dated November 3, 2004, the written plea agreement, dated November 3, 2004. and the transcript of the evidentiary hearing conducted on September 14, 2007. Exhibits 15, 16 and 43, respectively. These various documents evidence a thorough discussion of the charges, penalties, and waiver of rights which took place with the use of an interpreter prior to and during petitioner's entry of plea. During the plea canvass, the petitioner specifically admitted that the plea agreement has been translated for him and that he understood its contents. Exhibit 15. He specifically acknowledged his rights and the fact that a guilty plea would waive his right to a trial and to put the State to its burden of proof. He acknowledged waiver of his right call and cross-examine witnesses. *Id.* He further acknowledged the possible sentence he would receive and that he would face lifetime supervision after he had completed his sentence. *Id.* at 6-7.

The Nevada Supreme Court determined that petitioner had failed to demonstrate that his guilty plea was invalid, noting:

> Under Nevada law, the particular conditions of lifetime supervision are tailored to each individual case and, notably, are not determined until after a hearing is conducted just prior to the expiration of the sex offender's completion of a term of parole or probation, or release from custody. In light of the fact that the conditions of lifetime supervision applicable to a specific individual are not generally determined until long after the plea canvass, an advisement about those conditions is not a requisite of a valid guilty plea. Rather, all that is constitutionally required is that the totality of the circumstances demonstrate that appellant was aware that he would be subject to the consequence of

lifetime supervision before entry of the plea.

> Appellant's claim that he was unaware of the consequences of lifetime supervision is belied by the record. The plea agreement which appellant signed, provided that appellant's sentence would include lifetime supervision pursuant to NRS 176.0931. Further, he was advised of the consequence of lifetime supervision during the plea canvass. Therefore, we conclude that appellant was properly advised of the lifetime supervision requirement and thus, his plea was not involuntary for this reason.

Exhibit 53, pp. 6-7 (internal citations omitted).

This ground for relief is denied.

Ground Three

Petitioner claims that counsel was ineffective for failing to consult with him regarding his right to a direct appeal and because he failed to file a notice of appeal on petitioner's behalf.

Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *Roe v. Ortega-Flores,* 528 U.S. 470, 480 (2000). Additionally, the Court has said that relevant factors in determining if counsel acted ineffectively in failing to consult with or file an appeal include whether the conviction was the result of a trial or a guilty plea. *Id.* In the case of a guilty plea, the need for consultation may be less because there are fewer bases for appeal, generally, and because the decision to enter a guilty may be a reflection of the defendant's desire to put an end to the proceedings. *Id.*

To prevail on his claim, petitioner must demonstrate that his counsel knew of his desire to appeal or knew of reasons that an appeal would be appropriate but then failed to discuss an appeal with his client or failed to file a notice of appeal, when specifically asked to do so. Petitioner cannot make such a showing.

At the evidentiary hearing, petitioner was asked if he had asked his attorney to file an appeal. Exhibit 43, p. 15. He responded, "No. But at the time, I don't know the rule. . . . He didn't explain me nothing either." *Id.* When counsel testified, he stated that he did not recall petitioner asking for an appeal, but that the issue of appeal rights was covered in the plea agreement. *Id.* at 32. Counsel further testified that petitioner made no indication that he was unhappy with the plea or sentence. Counsel averred that if a request for an appeal had been made, he would have had minimal obligations in that regard, as the bulk of the appeal itself would have been handled by the public defender's office. *Id.* at 32-33.

The reviewing court, having been present at the entry of plea and the evidentiary hearing, found that petitioner was not credible. Exhibit 43, pp. 4, 42-43. The Nevada Supreme Court also found that petitioner had failed to demonstrate that he had requested an appeal or that counsel was ineffective for failing to file an appeal. Exhibit 53, pp. 4-5. Absent clear error, this Court is bound by that finding and by the subsequent findings of the Nevada Supreme Court. *See* 28 U.S.C. § 2254 (e)(1); *see also, United States v. Stoterau,* 524 F.3d at 997. No such error appears in this instance. No relief is warranted on ground three.

**IV.     Certificate of Appealability**

Should petitioner wish to appeal this decision, he must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently;

or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue. The Clerk shall enter judgment accordingly.

Dated this 1st day of April, 2011.

_____
UNITED STATES DISTRICT JUDGE